IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILBUR L. HOFFMAN-GARCIA, <u>ET AL.</u>,

   Plaintiffs,

               v.

METROHEALTH, INC., <u>ET AL.</u>,

   Defendants.

CIVIL NO. 14-1162 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Plaintiff Wilbur L. Hoffman, his wife, and their conjugal partnership, initiated this action against Hoffman's former employer, Metrohealth, Inc. d/b/a Hospital Metropolitano, and Metrohealth's insurance company, AIG, alleging his employment was terminated because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), Puerto Rico Law No. 100 of June 30, 1959, 29 P.R. Laws Ann. tit. 29 § 146, *et seq.* and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141 No. 29).[1]

Before the court is Metrohealth's Motion for Summary Judgment (Docket No. 143), which AIG joined (Docket No. 147). Hoffman opposed (Docket No. 149), Metrohealth replied (Docket No. 169) and Hoffman surreplied (Docket No. 174). The motion is GRANTED IN PART AND DENIED IN PART. As more fully explained below, the summary judgment record does not show that age was treated neutrally.

---

[1] Plaintiff also sued Metrohealth's General Manager, Karen Artau; Facilities Services Management & Maintenance, Inc.; and its President, Ian Rodríguez. On July 6, 2015, the court entered Partial Judgment dismissing (i) Hoffman's ADEA claims against Facilities Services Management & Maintenance, Inc., Ian Rodríguez-Alvarado, and Karen Artau-Feliciano; (ii) Hoffman's P.R. Law No. 100 claims against Facilities, Ian Rodríguez-Alvarado, and Karen Artau-Feliciano; (iii) Plaintiffs' Article 1802 claims against Facilities and Rodríguez-Alvarado; (iv) co-plaintiffs Zoraida I. Rodríguez-Díaz' and the conjugal partnership Hoffman-Rodríguez' claims against Artau-Feliciano; and (v) plaintiffs Zoraida I. Rodríguez-Díaz' and the conjugal partnership Hoffman-Rodríguez' claims under Article 1802 against Metrohealth, Inc. (Docket No. 142).

Hoffman was laid off when the department he headed closed. At the time, he was sixty-two years of age. Like Hoffman, Giovanny Martínez –the department's Supervisor– was laid off. But unlike Hoffman, he was rehired approximately three months later in circumstances that have not been adequately explained, to perform tasks that, in the end, would appear to make him Hoffman's replacement with a different title. He was thirty-six years of age. In consequence, summary judgment is inappropriate as to Hoffman's age discrimination claim. Because the allegations do not show tortious conduct other than prohibited discrimination covered by special statutes, however, Hoffman's claim under Article 1802 must be dismissed.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. LeBlanc v. Great

American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows.

## II. FINDINGS OF FACT[2]

### A. Hoffman's Position and Responsibilities

Hoffman worked for Hospital Metropolitano since 1995 until his lay off on September 30, 2012. See, Docket No. 144, Defendant's "Statement of Uncontested Material Facts in Support of Motion for Summary Judgment" ("SUMF") at ¶¶ 1-2. He was Director of the Department of Physical Plant (the "Department"). SUMF at ¶ 4. His duties included oversight and support for the correction of deficiencies, and meeting the standards of the Department of Health and the Joint Commission. SUMF at ¶ 5.

José Samuel Rosado was the Executive Director of Hospital Metropolitano in 2012. SUMF at ¶ 6. As such, he was in charge of all the departments in the hospital.[3] SUMF at ¶ 7. Those departments included, but were not limited to: the Nursing Department, the Human Resources Department, the Facilities Department, the Finance Department, etc. (Docket No. 144, Exh. C at pp. 30-31); see also, Exh. N at ¶¶ 22 (stating there were 14 department directors, without specifically identifying the departments)

---

[2] In addition to his response to defendant's SUMF, plaintiff submitted 130 additional statements and 167 pages of supporting documents, some of which are irrelevant for purposes of summary judgment. Although the court reviewed those materials, it will only consider and include in this Opinion and Order those facts that are material for purposes of summary judgment as mandated by Fed.R.Civ.P. 56. Moreover, the court will not incorporate statements pertaining to the claims plaintiffs withdrew.

[3] Plaintiff's qualification does not contest this fact (Docket No. 150 at ¶ 7). To the contrary, it confirms that Rosado was in charge of all departments.

### B. The Joint Commission

The Joint Commission is an independent, not-for-profit organization that accredits and certifies nearly 21,000 health care organizations and programs in the United States and Puerto Rico. The Commission's accreditation and certifications are recognized nationwide as a symbol of quality reflecting an organization's commitment to meeting certain performance standards. SUMF at ¶ 8. It conducts unannounced inspections. SUMF at ¶ 9. If a Hospital does not comply with the requirements of the Commission it can lose its certification. SUMF at ¶ 11. The Commission certifies Hospital Metropolitano. SUMF at ¶ 10.

### C. Inspections conducted by the Commission.

#### (i) May 2009

In May 2009, the Commission performed an inspection of Hospital Metropolitano. SUMF at ¶ 12. Hoffman was present during the inspection. SUMF at ¶ 13. During the inspection, the Commission made several findings of noncompliance, issuing a report showing that the Department was not in compliance with the Commission's requirements. SUMF at ¶¶14, 15.[4]

#### (ii) May 2012

In May 2012, the Commission inspected Hospital Metropolitano. SUMF at ¶ 16.[5] Hoffman was present during the inspection. SUMF at ¶ 17. During the inspection, the Commission made several findings of noncompliance by Hospital Metropolitano. SUMF at ¶ 18. The inspection

---

[4] Plaintiff's qualifications do not contest this fact but only notes that deficiencies were also found in other departments and that they were cured, which is evinced by the Commission's accreditation of the Hospital on that and other years. As such, this statement is deemed admitted.

[5] The Commission's Executive Summary for May of 2012 was attached as Docket No. 144. Exh. G.

report shows the Department was not in compliance with the Commission's requirements. SUMF at ¶ 19.[6]

After this inspection, Rosado considered closing the Department. SUMF at ¶ 42. The Hospital failed to comply with the Commission's requirements in 2006, 2009, and 2012. SUMF at ¶ 20. In 2012, the findings of deficiency were "higher than the usual findings the Commission makes after conducting a survey of a hospital." SUMF at ¶ 21.[7] About forty percent (40%) of the deficiencies found in May 2012 were related to the Department. SUMF at ¶ 22.[8]

### D. The Center for Medicare & Medicaid Services ("CMS")

The CMS oversees compliance of hospitals with the Medicare health and safety standards, and makes available to beneficiaries, providers/suppliers, researchers and State surveyors information about these activities. The survey (inspection) for this determination is done on behalf of CMS by the individual State Survey Agencies. SUMF at ¶ 23.

CMS certification is necessary for a hospital to be authorized to provide medical services to Medicare beneficiaries and Medicare Advantage beneficiaries. SUMF at ¶ 25. Because forty to fifty percent (40-50%) of Hospital Metropolitano's patients are Medicare and Medicare Advantage beneficiaries, lack of certification would impact its finances. SUMF at ¶ 41. Hospital surveys/inspections to obtain CMS certification are unannounced. SUMF at ¶ 26. Failure to comply with the requirements of Medicare may result in the hospital's closing. SUMF at ¶¶ 30, 31.

---

[6] Plaintiff admitted this fact, adding that other departments were not complying.

[7] Plaintiff admitted this fact, adding the findings were later cured.

[8] Once more, plaintiff admitted this fact adding that the deficiencies were cured under Hoffman's tenure. In support, they refer to Docket No. 150, Exhs. 2, 3, and 4. Those exhibits do not confirm that the deficiencies were cured under Hoffman's tenure, but that the Hospital was accredited.

### E. CMS Inspections

On July 9, 2012, CMS, through the Puerto Rico Health Department, notified Hospital Metropolitano that it would perform an inspection beginning on July 10, 2012. SUMF at ¶ 28. The inspection took place in July of 2012, after the Commission's inspection. SUMF at ¶ 29. During the inspection, CMS made findings of "Immediate Jeopardy" in areas under the supervision of the Department that required to be cured immediately or the CMS inspection would halt, and CMS certification would be revoked. SUMF at ¶ 32. Those deficiencies demonstrated lack of maintenance in the physical plant. SUMF at ¶ 37.[9]

At the end of the inspection, inspectors held an exit conference with Hospital Metropolitano personnel to provide a summary of all the deficiencies, and instructed Hospital Metropolitano to start working on curing the deficiencies found and not wait until the written report arrived. SUMF at ¶ 33. The findings made by CMS during the July 2012 inspection were deficiencies that were supposed to have been corrected after the Commission's May 2012 inspection. SUMF at ¶ 39. By September 1, 2012, approximately ten percent (10%) of the findings related to the Department made by CMS had been corrected or cured.[10] SUMF at ¶ 34. By September 30, 2012, approximately ten to fifteen percent (10-15%) of the findings related to the Department had been corrected or cured. SUMF at ¶ 95.

### F. Closing of the Department

On September 30, 2012, Rosado delivered to Hoffman a letter notifying the closing of the Department and of employees' layoff, as part of a restructuring and reorganization of the services

---

[9] In fact, CMS made ninety five (95) findings of deficiency in areas that the Physical Plant Department of Hospital Metropolitano had to comply with. SUMF at ¶ 38.

[10] Plaintiff denied the statement, claiming this was an "ongoing process" (Docket No. 150 at ¶ 34). The clarification does not contest the statement.

provided by said department. SUMF at ¶¶ 45-46; see also, Docket No. 150, Exh. P-12. The Department was the only department closed after the CMS inspection. See, Docket No. 150 at pp. 27-51, "Plaintiff' Additional Facts Not in Dispute Pursuant to Local Rule 56(c)" ("POS") at ¶ 76.[11] Hoffman does not know if the Hospital took into consideration his age or the age of the other employees in the Department when it decided to close the Department, but claims that he "felt discriminated because of his age." SUMF at ¶ 3; Docket No. 150, Exh. 1-B at p. 137.[12]

### G. The Department

As of September 30, 2012, the Department consisted of nine individuals. POS at ¶ 5. They were: (i) Hoffman (62 years old )(POS at ¶ 4); (ii) Edgardo Ayala-Esquilín, a wood worker (56 years old) (POS at ¶ 5); (iii) Francisco Mulero-Báez, a handyman (66 years old) (POS at ¶ 6); (iv) Israel Acevedo-Pérez, a handyman (77 years old) (POS at ¶ 7); (v) Reynaldo Díaz-Pizarro, a refrigeration technician (62 years old) (POS at ¶ 8); (vi) José Martínez-Figueroa, a handyman (73 years old) (POS at ¶ 9); (vii) Sixto Jurado Hernández, a handyman (60 years old) (POS at ¶ 10); (viii) Melinda Llompart-Cruz, a secretary (26 years old) (POS at ¶ 11); and (ix) Giovanny Martínez, Supervisor (36 years old) (POS at ¶ 12). On January 14, 2013, Martínez, was hired by the Hospital as a Safety Officer (POS at ¶ 13 and Docket No. 170 at ¶ 13).

---

[11] According to Rosado, he decided to close the Department after the Commission's inspection, but notified Hoffman after the CMS inspection. In Rosado's words:
  Q:   Did you decide…did you make the decision to close the department after the CMS inspection of was it…
  A:   It was for the Joint Commission inspection.
  Q:   It was for the Joint Commission inspection.
  A:   I notified Mr. Hoffman after the Medicare inspection. I notified Mr. Hoffman after the Medicare Inspection.
See, Docket No. 144, Exh. C, p. 80, lines 18-25.

[12] In Hoffman's words:
  Q. Do you feel sir that you were discriminated because of age, sir?
  A. Yes, I feel that I was discriminated on the basis of my age.
Docket No. 150, Exh. 1-B at p. 137.

### H. Other events

**(i)    Medicare Agreement**

On October 19, 2012, CMS sent a letter to Hospital Metropolitano notifying that it would terminate the Medicare agreement with Hospital Metropolitano, after discovering during the inspection of July 13, 2012, that the Hospital was not in compliance with several of the Medicare Conditions of Participation for Hospitals, as found by both the CMS and the Joint Commission inspection. SUMF at ¶ 36; Docket No. 144, Exh. L.

**(ii)   Facilities Services Management & Maintenance, Inc.**

After the Department's closing, Hospital Metropolitano contracted an external independent corporation, Facilities Services Management & Maintenance, Inc. ("FSMM"), to perform the duties of the Department. SUMF at ¶ 48. On October 1, 2012, Rosado, on behalf of Hospital Metropolitano entered into a services contract with FSMM. SUMF at ¶ 51. Pursuant to the Contract, the agreement was entered into for the purpose of maintaining the physical condition of the Hospital to be in optimum shape and foremost compliance with the state laws and regulations applicable to state and federal agencies and accrediting agencies, including but not limited to the Health Department of the Commonwealth of Puerto Rico, the Health Department of the United States and the Joint Commission on the Accreditation of Hospital Organizations. SUMF at ¶ 52. In this way, FSMM must ensure compliance with the requirements imposed by the different local, federal agencies and accrediting entities, and correct all of the findings of deficiency made by the different agencies and accrediting entities. SUMF at ¶ 53; Docket No. 144, Exh. M-1 at pp. 1, 2 and 6.

### III.     DISCUSSION

**A. ADEA**

Hoffman contends that he was discriminated against because of his age in violation of the ADEA and Puerto Rico Law No. 100. Under the ADEA, an employer may not "discharge ... or otherwise discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] age." 29 U.S.C. § 623(a)(1). A plaintiff asserting a claim under the ADEA has the burden of establishing "that age was the 'but-for' cause of the employer's adverse action." See, Acevedo-Parrilla v. Nobartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012)(quoting Gross v. FLB Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). Differently stated, the plaintiff's age must have been the determinative factor as opposed to merely a determinative factor in the employer's decision. Goss, 557 U.S. at 168.

Where, as here, there is no direct evidence of discrimination, courts evaluate ADEA claims under the burden-shifting framework drawn from McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under this framework, plaintiff must make out a *prima facie* case of discrimination. Sánchez v. Puerto Rico Oil Co. 37 F.3d 712, 719 (1st Cir. 1994). If a *prima facie* case is established, an inference of discrimination arises, switching to the employer the burden of articulating a legitimate, nondiscriminatory reason for the challenged action. Id. Should the employer do so, the inference arising from the plaintiff's *prima facie* case drops from the case. Id. In order to prevail, the plaintiff must show that the employer's articulated reason was a pretext to mask unlawful discrimination. Id.

There are different formulations of the *prima facie* case. See, Barbara T. Lindermann, Paul Grossman, & C. Geoffrey Weirich, *Employment Discrimination Law*, 12-67 (5th Ed. 2012)(discussing formulations); and Lindemann & Kadue, *Age Discrimination in Employment*

*Law*, 363-364 (2003)(same). Hoffman relies on the one pursuant to which plaintiff must establish that he (i) was at least 40 years old at the time of the adverse action; (ii) met the employer's legitimate expectations; (iii) suffered an adverse employment action; and (iv) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services (Docket No. 249 at p. 6).

In the First Circuit, however, the McDonnell Douglas' burden shifting paradigm assumes a slightly different form in age discrimination cases depending on whether or not the dismissal represented part of a reduction in force. See, Hidalgo v. Overseas Condado Insurance Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997)(so stating). If the employer dismissed the plaintiff as part of a reduction in force, the plaintiff need not show replacement by someone with equivalent job qualifications. Instead, to satisfy the fourth prong, plaintiff may demonstrate either that the employer did not treat age neutrally or that younger persons were retained in the same position. Id. at 332-333.

Moving from the general to the particular, Hoffman (i) was over 40 years of age during the relevant period; (ii) was qualified for the position he had occupied for over 15 years;[13] and (iii) suffered an adverse employment action. But Martínez, plaintiff's former subordinate whose employment was also terminated when the Department closed, was rehired by the Hospital (albeit as a "Safety Officer" rather than "Supervisor") some three months later to perform at least some

---

[13] The First Circuit has found that the legitimate job-performance expectation element of the *prima facie* case is met when plaintiff demonstrates a long history of experience in the employment with defendant, including largely favorable performance reviews, promotions, and ordinary pay raises. See, Acevedo-Parrilla, 696 F.3d at 139 (plaintiff, who had a long history of employment at the company, spanning an eleven-year period, with overall positive reviews, was qualified for the position); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995)(citing Woods v. Friction Materials, Inc., 30 F.3d 255, 261 (1st Cir. 1994)). This is true, even in the absence of evidence of adequate job performance extending up to the date of discharge. Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 n.4 (1st Cir.1994)(citing Keisling v. SER-Jobs for Progress, 19 F.3d 755, 760 (1st Cir.1994)). In this case, it is uncontested that Hoffman worked as Hospital Metropolitano's Physical Plant Director from 1995 until September 30, 2012. As such, it is hard to conclude that he was not qualified under the *prima facie* analysis for the position he had occupied for over 15 years.

of Hoffman's functions. Hence, Hoffman may be said to have established a *prima facie* case. Id. at 334 (evidence that plaintiff's job functions were absorbed by other employees sufficient to assume that plaintiff has satisfied McDonnell Douglas).

As stated earlier, once plaintiff makes out a *prima facie* showing of discrimination, the defendant must articulate a legitimate, non-discriminatory reason for the challenged action. The Hospital states it has such a reason: its interest in promptly curing all deficiencies found by CMS, and ensuring future compliance with the Joint Commission's and CMS' standards to avoid adverse financial consequences. These are legitimate, non-discriminatory grounds for the employer's decision to close the Department and lay off Hoffman. See, Ousley v. McDonald, 2015 WL 1475703, *13 (March 31, 2015)(report listing several deficiencies in plaintiff's department's performance after an inspection by the VA's Office of Security and Law Enforcement considered a legitimate basis for the decision to remove plaintiff from position); Peterson v. King Tree Center, Inc., 722 F.Supp. 360, 363-364 (S.D. Ohio 1989)(previous and upcoming state inspections which put the defendant's state license in jeopardy, the urgency in resolving immediately any deficiencies remaining after the first state inspection, and the unrebutted inadequacies in the plaintiff's medical records department, which remained uncorrected after an in-house corporate follow-up inspections, deemed legitimate, nondiscriminatory reason for employment action).

The record is devoid of any evidence demonstrating that the Hospital's articulated reason for its decision to close the Department is pretextual, much less a pretext to discriminate against Hoffman because of his age. To that end, Hoffman does not dispute the deficiency findings made by both the Commission and CMS, and does not even suggest that the members of those entities were motivated by any illegal or inappropriate factors. While he states that corrections had been made and were eventually cured (Docket No. 149 at p. 9-10, 12-13 and Docket No. 150 at ¶¶ 15,

18, 19, 21, 32, 34), "an employee generally could be performing satisfactorily in some areas of the job, yet be deficient in others," but that does not deprive an employer of the right to terminate employees with performance deficiencies.  See, Menzel v. Western Auto Supply Co., 662 F.Supp. 731, 743 (D.P.R. 1987), *aff'd*, 848 F.2d 327 (1st Cir. 1988)(so noting).  For the same reason, an employer need not wait until licenses, accreditations or certifications are lost to take corrective and preventive action, and is not required to trust that in the future, somehow, deficiencies will be cured, particularly in light of the history of the deficiencies found here.

Hoffman points out that he had received good performance ratings (Docket No. 149 at p. 10).  Past satisfactory reviews do not call into question subsequent criticism even when they culminate in a discharge.  Leffell v. Valley Financial Services, 113 F.3d 787, 795 (7th Cir. 1997).  And thus, prior evaluations fail to render more recent negative evaluations of the employee's performance inherently untrustworthy.  Kerns v. Capita Graphics, Inc., 178 F.3d 1011, 1018 (8th Cir. 1999)(citing Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998).

Viewing the evidence in the light most favorable to Hoffman, this would be the end of the story if Martínez had not been rehired.  But Martínez was rehired approximately three months after the closing, whereas Hoffman was not.  Events are not frozen in time when a downsizing is implemented, for they alter the configuration of the workplace.  Neutrality is gauged against the decisional process leading up to the downsizing and the attendant result and consequences.  Therefore, in line with this principle, the Hospital contends that some of the functions and duties that Hoffman carried out were later assigned to Martínez, but that Martínez no longer works in the Department nor holds the position of Physical Plant Director (Docket No. 169 at pp. 10-11).  By extension, it argues, no inference of prohibited discrimination may be drawn from these events.

It is true that in general, an employee cannot be said to have been replaced when functions are reallocated. See, Le Blanc v. Great American Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993)(pointing out that a discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work); Dureix v. ConAgra, 161 D.P.R. 269, 287 (2004)(redistribution of functions does not equal replacement under Puerto Rico law). Nevertheless, the Hospital has not explained why Martínez was rehired (and rehired approximately three months after the closing); what his functions were when he was a Supervisor in the department that Hoffman headed; and what his functions are as a Safety Officer. The comparison is crucial given that, as the Hospital has acknowledged, Martínez is performing at least some (the record does not show how many) of the functions that Hoffman performed while working with him. See, Miller v. Borden, Inc., 168 F.3d 308, 313 (7th Cir. 1999)(employer who terminates employee in the course of restructuring the business must explain its actions to counter the plaintiff's assertion that he was treated less favorably than younger employees).[14]

To test the implications of the Hospital's actions, consider the hypothetical that Martínez had been retained at the time of the closing. In such a case, to secure a dismissal, the Hospital would at least need to explain why it retained the younger employee. Granting that Hoffman was the Director and Martínez the Supervisor, the record is unclear as to whether their functions were mirror images of the other. In the same way, to demonstrate that Martínez was not retained to effectively carry out Hoffman's job, the record would have to shed light on what it was that

---

[14] Plaintiff also refers to Llompart, the Department's secretary, who instead of being laid off was transferred to another department to continue working as a secretary. Before being assigned to the Department, Llompart was a secretary in a different department. Thus, when the Department closed, she continued working as a secretary in another department. The Hospital has adequately explained the treatment it accorded Llompart.

Martínez and Hoffman did, and how those tasks compare to the tasks that he is presently carrying out.

Fast-forwarding to the facts at hand, the situation is not far different to the one described in the hypothetical. As developed, the record is insufficient to rule out that Martínez ended up as Hoffman's *de facto* replacement with another title barely three months after the closing, overseeing not a department but functions effectively related to the Hospital's physical plant that Hoffman oversaw and was in charge of. To be sure, there is no physical plant department; it was closed. And a contractor was hired to do what the department had been held accountable for. But as the court interprets the facts, Martínez may be overseeing the contractor, and may have been doing so since shortly after the closing, in effect making him responsible before the Hospital's eyes for the contractor's performance much like Hoffman had been responsible for the Department's performance before it closed.

The lack of explanation backed up by admissible evidence on these core issues is fatal to the Hospital's motion for summary judgment. See, Rivera-Ruiz v. González-Rivera, 983 F.2d 332, 334-335 (1st Cir. 1993)(denying motion for summary judgment in employment discrimination case where record was unclear as to employee's qualifications); Maine v. Kerramerican. Inc., 480 F.Supp.2d 357, 359 n.3, 364-365 (D. Maine 2007)(denying summary judgment where employees' roles was not clear). Companies are entitled to reorganize, downsize and outsource work to the extent they do not trespass legal constraints, in this case, federal and state antidiscriminatory statutes. Based on the record as has been presented here, the court is not persuaded the Hospital treated age neutrally.[15]

---

[15] The Hospital included in a Declaration data regarding employee's average ages (Docket No. 144, Exh. N at pp. 4-20). The way the data was presented is somewhat confusing. Among other things, the document states that average age before September 30, 2012 was 44. Id. at ¶ 9. It does not, however, state what period was taken into account to reach that conclusion.

### B. Puerto Rico Law 100

Puerto Rico Law 100 "provides a cause of action in favor of persons who suffer discrimination in their employment because of their age. A plaintiff establishes a *prima facie* case of discrimination under this statute by demonstrating that (1) she suffered an adverse employment action, (2) the adverse action lacked just cause; and (3) there exists some basic fact substantiating the type of discrimination alleged. Salva v. Eagle Global Logistics, 2016 WL 2685106, *3 (D.P.R. September 18, 2006); Morales v. Nationwide Insurance Co., 237 F.Supp.2d 147, 152 (D.P.R. 2002); Hernández v. Trans Oceanic Ins. Co., 151 D.P.R. 754, 774-775 (2000). The Hospital closed the Physical Plant Department, laying off nearly all of the Department's employees. A department's closing is considered just cause for the discharge under Puerto Rico law. See, P.R. Laws Ann. tit. 29 § 185b(d). Yet as noted in connection with the ADEA, it is unclear whether age was treated neutrally.

### C. Civil Code

Hoffman seeks payment for physical pain and suffering under Article 1802 of the Puerto Rico Civil Code because of defendants' intentional discrimination against him (Docket No. 29 at ¶ 51). Article 1802, Puerto Rico's general tort statute, provides that a person who by an act or omission causes damages to another through fault or negligence shall repair the damage so done. P.R. Laws Ann. tit. 31 § 5141. To the extent a specific labor or employment statute covers the conduct for which a plaintiff seeks damages, he is barred from relying on the same conduct to support a claim for damages under Article 1802. See, Santana-Colón, 81 F.Supp.3d at 140-141 (D.P.R. 2014)(so recognizing). The remedies available to the employee for violation of the labor/employment statute will be the remedy established in the statute prohibiting the conduct complained of. Id. at 141. Because Hoffman seeks redress under Article 1802 for conduct covered

by ADEA and Law 100, his claim under Articles 1802 must be dismissed. See, Santana-Colón, 81 F.Supp.3d at 140 (dismissing claims under similar circumstances).

## IV.  CONCLUSION

In light of the foregoing, the court GRANTS IN PART and DENIES IN PART the Hospital's motion for summary judgment at Docket No.143. Summary judgment is inappropriate as to Hoffman's age discrimination claims. Given that the allegations do not show tortious conduct other than prohibited discrimination covered by special statutes, however, Hoffman's claim under Article 1802 must be dismissed. The jury will be informed during trial of the uncontested facts set forth at Section II of this Opinion.

**SO ORDERED.**

In San Juan, Puerto Rico, this 3d day of August, 2016.

                                                s/Pedro A. Delgado-Hernández
                                                PEDRO A. DELGADO-HERNÁNDEZ
                                                United States District Judge