## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

WILBUR L. HOFFMAN-GARCIA, <u>et al.</u>,

 Plaintiffs,

   v.         CIVIL NO. 14-1162 (PAD)

METROHEALTH, INC., <u>et al.</u>,

 Defendants.

## OPINION AND ORDER

Delgado-Hernández, District Judge.

 Plaintiff Wilbur Hoffman-García essentially alleges that Metrohealth discriminated against him because of his age and unjustly terminated his 17-year employment with the company. The court granted Metrohealth's motion under Rule 50(a) of the Federal Rules of Civil Procedure. This Opinion and Order memorializes and expands upon the grounds that the court relied on to do so.

## I. BACKGROUND

 Metrohealth does business as Hospital Metropolitano in Las Lomas, San Juan, Puerto Rico. Hoffman was the Director of the Hospital's Physical Plant Department. The Hospital closed the Department, laying off Hoffman and other employees, including the Department's Supervisor, Giovanny Martínez. Approximately three months later, it rehired Martínez as Safety Officer. Hoffman was 62 years of age and Martínez was 36. Believing the Hospital acted illegally, Hoffman, his wife and their legal conjugal partnership sued the Hospital and others complaining of: (1) age discrimination under the Federal Age Discrimination in the Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and Puerto Rico's general antidiscrimination statute, Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 §§ 146 *et seq.* ("Law 100"); (2) unjust discharge

in connection with Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. Tit. 29 §§ 185a *et seq*. ("Law 80"); and (3) damages pursuant to Puerto Rico's general tort statute, Article 1802 of the Commonwealth's Civil Code, P.R. Laws Ann. tit. 31 § 5141 (Docket Nos. 1 and 29).[1]

Following discovery, the court granted in part and denied in part the Hospital's motion for summary judgment (Docket No. 180).[2] Basically, it concluded that the Hospital had legitimate, non-discriminatory grounds to close the Department and lay off Hoffman, but viewing the record in light most favorable to him, it was unclear whether the Hospital treated age neutrally in rehiring Martínez rather than Hoffman. Id. at pp. 2, 11-14. There was a gap in the evidence concerning Hoffman's and Martínez' functions before and after the layoffs; and on whether Martínez' functions were the same functions that Hoffman had performed as Director. Id. at pp. 2, 13-14. If the answer to the last question were in the affirmative, the Hospital would have effectively replaced an older employee with a younger, less senior employee with no explanation for its decision.[3] Accordingly, it denied summary judgment with respect to the Hospital's decision to rehire Martínez instead of Hoffman. Given the allegations on which the tort action was predicated, however, it granted summary judgment dismissing Hoffman's claim under Article 1802 of the Civil Code. Id. at pp. 15-16.[4]

---

[1] Only Hoffman and the Hospital remain in the case.

[2] The decision may be found as Hoffman-García v. Metrohealth, Inc., 2016 WL 4146098 (D.P.R. Aug. 3, 2016).

[3] Hoffman started working for the Hospital in 1995; Martínez in 2010.

[4] Hoffman sought payment for physical pain and suffering under Article 1802 on account of allegedly intentional discrimination against him (Docket No. 29 at ¶ 51). It is settled that to the extent a specific labor or employment statute covers the conduct for which a plaintiff seeks damages, he is barred from relying on the same conduct to support a claim for damages under Article 1802.

Trial was held on April 10, 11, 12 and 13, 2017 (Docket Nos. 240, 242-244).  Hoffman

testified on his own behalf, and presented the testimony of his wife, Zoraida Rodríguez-Díaz, and

of the Hospital's Human Resources Director, Ricardo Pizarro, in addition to excerpts from

Martínez' redacted deposition (Docket Nos. 240, 242, 243, 244).  The Hospital presented the

testimony of José Rosado, the Hospital's Executive Director and decision maker at the time of the

events (Docket No. 244).  At the end of Hoffman's case, the Hospital moved for dismissal under

Rule 50(a) of the Federal Rules of Civil Procedure (Docket No. 244).  The motion was denied and

renewed at the close of all evidence (Docket Nos. 244 and 245).  After hearing arguments, the

court granted the motion (Docket No. 245).  It found the Hospital acted in compliance with Law

80 and that no reasonable jury could conclude from the evidence that Hoffman was discriminated

against because of his age (Transcript of Jury Trial held on April 13, 2017, p. 32).

## II.    STANDARD OF REVIEW

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, if a party has been fully

heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue, an opposing party may file a motion for

judgment as a matter of law at any time before the case is submitted to the jury.  Fed. R. Civ. P.

50(a).  In examining a Rule 50(a) motion, the court must view the evidence and draw all fair

inferences in the light most favorable to the non-movant.  See, Mangla v. Brown University, 135

F.3d 80 (1st Cir. 1998)(citing Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 76 (1st Cir.

See, Santana-Colón v. Houghton Mifflin, 81 F.Supp.3d 129, 140-141 (D.P.R. 2014)( (so recognizing).  Because Hoffman asked
for redress under Article 1802 as to conduct covered by ADEA and Law 100, the Article 1802 claim was dismissed.

1993)).  It may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.  See, Katz v. City Metal Co., Inc., 87 F.3d 26, 28 (1st Cir. 1996)(quoting Richmond Steel, Inc. v. Puerto Rican American Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992)).  If from the evidence presented at trial, fair minded persons could draw different inferences, then the matter is for the jury to resolve and judgment as a matter of law is not appropriate.  See, González-Pérez v. Toledo-Dávila, 709 F.Supp.2d 125, 127-128 (D.P.R. 2010)(citing Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002)).  But to warrant submission to the jury, the non-movant must present more than a mere scintilla of evidence.  He may not rely on conjecture or speculation.  Id.

### III.    FACTUAL FINDINGS[5]

Hoffman attacks the Hospital's decisions to let him go when it closed the Physical Plant Department and to rehire Martínez instead of him as Safety Officer**.**  Even though the events are related, they are different and will be analyzed as such.

A.  Hoffman's Pre-Closing Position

Hoffman was the Director of the Hospital's Physical Plant Department (Transcript of Jury Trial held on April 11, 2017, p. 45; Transcript of Trial held on April 12, 2017, pp. 23, 100).  He was in charge of the Department and responsible for directing all work therein (Transcript of Jury Trial held on April 12, 2017, pp. 102, 107-108).  As Director, he managed the Department's budget; made personnel and contractor recommendations; and carried out disciplinary actions if necessary.  Id. at pp. 102-103, 107.  His job description (Appendix A) lists thirty-four duties and

---

[5] The court incorporates by reference the findings of fact entered in connection with the summary judgment ruling in Docket No. 180 at pp. 3-8, corresponding to 2016 WL 4146098 at *2-*4.

responsibilities.  He earned $7,432 per month (Transcript of Jury Trial held on April 11, 2017, p. 23).

Hoffman was a member of the Hospital Executive Cabinet (Transcript of Jury Trial held on April 12, 2017, pp. 100, 102-103).  The Cabinet met every Wednesday and was composed of the Hospital's Executive Director and the directors of the Hospital's Departments, who were the highest-ranking officials in Hospital Metropolitano.  Id. at pp. 99-100.  It discussed operational matters, goals, policy, initiatives to attract new patients, new services, and departmental concerns. Id. at p. 99.  In addition, Hoffman would meet with the Hospital's Executive Director two or three times weekly to discuss matters related to the Physical Plant Department and its projects.  Id. at pp. 101-102.

B.  Martínez' Pre-Closing Position

Martínez was the Physical Plant Department's Supervisor.  Id. at p. 101.  He reported to Hoffman, who in turn supervised him.  Id.  As such, he was Hoffman's second-in-command.  Id. at p. 137.  Under Hoffman's direction, he was in charge of "working the field."  Id. at p. 105.  Once Hoffman determined the different tasks that had to be performed, Martínez would assign and distribute the staff, and go to the work area to verify that work was done in compliance with Hoffman's instructions.  Id.  He made lists of materials and met with Hoffman to "see to it" that the Hospital's facilities were in optimal condition.  Id. at pp. 16-17.  He was not a member of the Executive Cabinet and did not attend cabinet meetings.  Id. at pp. 106, 118.

Although Hoffman delegated matters to Martínez or worked with him with respect to various department issues, Martínez was never bestowed with full authority over the Physical Plant

Department. He could not approve the Department's budget, retain independent contractors, or prepare departmental staffing patterns without consulting with Hoffman (Transcript of Jury Trial held April 11, 2017, p. 46). In Hoffman's absence, he carried out some of Hoffman's duties, not all. When Martínez worked by himself during alternate weekends at the Hospital, if anything beyond repairing or fixing utilities was necessary, he had the obligation to contact Hoffman and consult with him. Id. at p. 47. Hoffman, however, would not consult with Martínez decisions to use personnel to fix equipment (Transcript of Jury Trial held on April 11, 2017, p. 6).

    C.  Department's Closing

    On September 30, 2012, the Hospital closed the Physical Plant Department to cure promptly all deficiencies that the Center for Medicare and Medicaid Services ("CMS") had found in the Hospital's facilities, and to ensure future compliance with the standards of CMS and the Joint Commission on accreditation of health care organizations and programs to avoid adverse financial consequences (Transcript of Jury Trial held on April 12, 2017, p. 108; Docket No. 180 at p. 11).[6] With that in mind, it retained Facilities Service Maintenance and Management ("FSM"), a contractor, to do the work of the Physical Plant Department (Transcript of Jury Trial held on April 12, 2017, pp. 109, 135-136, 155). In turn, FSM hired Martínez to work on the transition of the Hospital's physical plant to FSM, on which he worked for about three months. Id. at pp. 109, 128-129. The Hospital created a Safety Officer position in January 2013 and hired Martínez for

---

[6] CMS oversees hospitals' compliance with the Medicare health and safety standards, and makes available to beneficiaries, providers/suppliers, researchers and state surveyors information about these activities (Docket No. 180, p. 5). CMS certification is necessary for a hospital to be authorized to provide medical services to Medicare and Medicare Advantage beneficiaries. Id. Because forty to fifty percent of the Hospital's patients are Medicare and Medicare Advantage beneficiaries, lack of certification would impact the Hospital's finances. Id. The Joint Commission is an independent, not-for-profit organization that accredits and certifies health care organizations and programs in the United States and Puerto Rico. Id. at p. 4.

the position the same month.  Id. at pp. 109-110, 126.  The position did not exist while the Physical

Plant Department was operational.  Id. at pp. 110-111.

    D. Safety Officer Position

Martínez's duties and responsibilities as Safety Officer are contained in his Job Description

(Appendix B).  The Hospital's Executive Director explained during trial that as Safety Officer,

Martínez only performed 3 of the 34 duties listed in Hoffman's Job Description, to wit: duty

number 8 in the Direction and Planning section in page 1, as well as duties number 1 and 2 in the

Safety section in page 3 (Transcript of Jury Trial held on April 12, 2017, pp. 118-119).  Martínez

testified by way of deposition,[7] that he verified all inspections to "see to it" that they were up-to-

date; worked on fire drills; conducted safety talks; and was engaged in "things related to security"

as to complaints and hospital officers, in addition to several other duties that he did not mention

(Transcript of Jury Trial held on April 12, 2017, p. 19).  He stated that Hoffman carried out the

functions that he mentioned while the Physical Plant Department was still open.  Id.  He did not,

however, assert to have had any responsibility over physical plant repairs. Id. at pp. 115-116, 159.

Nor did he have oversight or supervisory duties related to FSM.  Id. at pp. 115-117.  Those were

the Executive Director's duties.  Id.

As Safety Officer, Martínez supervised three employees who worked at the Hospital's

switchboard, and the contractors that provided security-guard and parking services to the Hospital.

---

[7] The testimony was admissible under Rule 32(a)(4) of the Federal Rules of Civil Procedure, which permits use of a witness' deposition during the trial if the witness is unavailable as specified in the rule.

_Id._ at p. 156.[8]   Hoffman never supervised the contractor that provided security guards; the contractor providing parking services; or the switchboard employees.  _Id._ at p. 159.  Martínez earned $2,183 per month.  _Id._ at pp. 48-49.  The Hospital discharged him in April 2013 for failing the probationary period.  _Id._ at pp. 129-130.

## IV.    DISCUSSION

### A.  __ADEA__

Under the ADEA, an employer may not "discharge ... or otherwise discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] age." 29 U.S.C. § 623(a)(1).  A plaintiff asserting a claim under the ADEA has the burden of establishing "that age was the 'but-for' cause of the employer's adverse action." _See_, _Acevedo-Parrilla_ v. _Novartis Ex-Lax, Inc._, 696 F.3d 128, 138 (1st Cir. 2012)(quoting _Gross_ v. _FBL Financial Services, Inc._, 557 U.S. 167, 177 (2009)).  Differently stated, the plaintiff's age must have been _the_ determinative factor as opposed to merely _a_ determinative factor in the employer's decision.  _Gross_, 557 U.S. at 168.

Where, as here, there is no direct evidence of discrimination, courts evaluate ADEA claims under the burden-shifting framework drawn from _McDonnell Douglas_ v. _Green_, 411 U.S. 792

---

[8] Hoffman argues that the broad language in duty number 29 at page 3 of the Safety Officer's Job Description is indicative that Martínez could supervise contractors other than those providing parking services and security guards.  This duty reads: "To supervise the compliance of the companies contracted."  But read together with all other duties in the document, Martínez's deposition, and the Executive Director's testimony, no reasonable jury could agree with Hoffman's argument.  The job description lists the Safety Officer's responsibilities related to parking area and security guard contractors at numbers 30, 31, 32, 34, 36 and 50.  Moreover, Martínez did not testify that he supervised any other contractors, and said nothing about having any authority over FSM.  The Executive Director so confirmed without contradiction (Docket No. 254, Transcript of Jury Trial held on April 12, 2017, pp. 151, 155-156).  In consequence, it is not reasonable to infer from the evidence that Martínez oversaw every single contractor – even contractors providing radiology services or emergency room physician services- simply because of the general language of duty number 29.

(1973). Under this framework, plaintiff must make out a *prima facie* case of discrimination. Sánchez v. Puerto Rico Oil Company. 37 F.3d 712, 719 (1st Cir. 1994). If a *prima facie* case is established, an inference of discrimination arises, switching to the employer the burden of articulating a legitimate, nondiscriminatory reason for the challenged action. Id. Should the employer do so, the inference arising from the plaintiff's *prima facie* case drops from the case. Id. In order to prevail, the plaintiff must show that the employer's articulated reason was a pretext to mask unlawful discrimination. Id.

There are different formulations of the *prima facie* case. See, Mc Donnell Douglas Corp., 411 U.S. at 802 n.13 (noting that the specification of the *prima facie* proof required from plaintiffs is not necessarily applicable in every respect to differing factual situations); Barbara T. Lindermann, Paul Grossman, & C. Geoffrey Weirich, *Employment Discrimination Law*, 12-67 (5th Ed. 2012)(discussing formulations of *prima facie* case); and Lindemann & Kadue, *Age Discrimination in Employment Law*, 363-364 (2003)(same). Hoffman was dismissed as part of a reduction in force.[9] As such, he must show that: (1) he fell within the ADEA's protected age group, that is, more than forty years of age: (2) he met the employer's legitimate performance expectations; (3) he experienced an adverse employment action; and (4) the employer did not treat age neutrally or retained younger persons in the same position. See, Pages-Cahue v. Iberia Líneas

---

[9] In a reduction in force, "business considerations cause an employer to eliminate one or more positions within the company." Barnes v. GenCorp., 896 F.2d 1457, 1465 (6th Cir. 1990).

Aéreas de España, 82 F.3d 533, 536 (1st Cir. 1996)(identifying elements for a *prima facie* showing in a reduction-in-force case).[10]

Beyond a termination resulting from reductions in force, a plaintiff may also challenge as discriminatory a post-layoff failure to rehire. See, Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 584 (1st Cir. 1999)(distinguishing between reduction-in-force case and failure-to-rehire case); Martin v. Manna Pro Corp., 20 Fed.Appx. 231, 233 & n.* (4th Cir. Oct. 16, 2001)(unpublished) (differentiating discriminatory layoff from failure to recall or rehire as different adverse employment actions)(citing Lawson v. Burlington Industries, Inc., 683 F.2d 862, 863-864 (4th Cir. 1982)). In general, to establish a *prima facie* case of failure to rehire, a plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified and applied for a job for which the employer was seeking applicants; (3) he was rejected; and (4) after his rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. See, Fernandes, 199 F.3d at 584-585 (identifying elements of *prima face* case in this context).

Pretext analysis is more demanding than the assessment of whether a *prima facie* case has been established, moving the inquiry to a new level of specificity. See, Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)(describing analysis). The employee must elucidate specific facts which would enable a reasonable jury to find that the reason given for the employer's action is a lie intended to cover up the employer's real motive: plaintiff's age. See, Meléndez v.

---

[10] If the plaintiff was not dismissed as part of a reduction in force, with respect to the fourth element it is enough for him to show that the employer sought a replacement for him, demonstrating a continuing need for plaintiff's services. See, Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009)(setting forth elements of *prima facie* case in case not involving reduction in force).

Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010)(discussing pretext). To this end, the employee's burden merges with the ultimate burden of persuading the fact finder that he has been the victim of intentional discrimination. See, Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 6 (1st Cir. 2000)(so noting).

   **B. Law 100/Law 80**

   Law 100 provides a cause of action in favor of persons who suffer discrimination in their employment because of their age. See, P.R. Laws Ann. tit. 29 § 146 (prohibiting discrimination in protected categories including age, and laying out remedies for violation). In the absence of direct evidence of discrimination, a plaintiff may rely on circumstantial evidence through the "just cause" framework set in Article 3 of the statute.[11] At its core, the framework consists of three stages: (1) a *prima facie* case; (2) burden shifting; and (3) ultimate demonstration of discrimination. See, Caraballo-Cecilio v. Marina PDR Tallyman LLC, 2016 WL 6068117, *2 (D.P.R. Oct. 13, 2016)(describing framework).

   A plaintiff establishes a *prima facie* case by demonstrating that: (1) he suffered an adverse employment action; (2) the adverse action lacked just cause; and (3) there exists some basic fact substantiating the type of discrimination alleged. See, Rodríguez v. Executive Airlines, Inc., et al., 180 Fed. Supp. 3d 129, 132-133 (D.P.R. 2016)(setting forth elements of *prima facie* case under Law 100); Varela Teron v. Banco Santander de Puerto Rico, 257 F.Supp.2d 454, 466

---

[11] Article 3 provides that the acts mentioned in Articles 1 and 2 (*i.e.* discharge, layoff, and failure to hire), shall be presumed to have been committed in violation of Law No. 100 "whenever the same shall have been performed without just cause." P.R. Laws Ann. tit. 29 §§ 146, 148. The presumption is of a "controvertible character." Id. at Section 148.

(D.P.R.2003)(same).[12]  In Puerto Rico, the term "just cause" is construed by reference to Law 80.

See, Rodríguez, 180 F.Supp.3d at 133 (so recognizing).

Law 80 requires the employer to pay a statutory indemnity to employees hired for undefined term who are dismissed without just cause.  See, Article 1 of Law 80, supra at § 185a (stating payment requirement).  Article 2 includes as examples of just cause, full, temporary or partial closings of establishments; reorganizations; and actual or anticipated reduction in production, sales or profit.  Id. at §§ 185b(d), (e), (f).[13]  Article 3, however, provides that if an employer terminates employees for one of those three reasons, it must give preference to those employees within the same occupational classification who have greater company-wide seniority, that is, seniority with the employer counted from the last time that the employee began to work for the employer in a continuous and uninterrupted manner.  Id. at § 185c.  In this way, it modifies the just cause calculus by requiring compliance with preferential retention/recall rules.  Those rules must be followed to avoid an unjust discharge finding even though the reason for the workforce reduction is otherwise considered just cause.  See, Rodríguez, 180 F.Supp.3d at 132 (pointing out consequence of not complying with Law 80's preferential treatment rules).

---

[12] See also, Rodríguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 62 (1st Cir. 2005)(validating jury instruction to the effect that, for burden of proof in a Law No. 100 claim to shift to employer, plaintiff must prove that: she was in a protected class, was fired, and the termination was unjustified); Menzel v. Western Auto Supply Company, 848 F.2d 327, 331 (1st Cir. 1988)(pointing out that "[i]f plaintiff fails to show that there was no just cause, the presumption of discrimination is not activated").

[13] These are considered just-cause grounds for termination related to the employer's operations, restructuring or downsizing. See, García-García v. Costco, 878 F.3d 411, n.12 (1st Cir. 2017)(referring to grounds for termination set in P.R. Laws Ann. tit. 29 § 185b(d)-(f))(quoting Carrasquillo-Ortiz v. American Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016)).  The statute also provides three other examples of just-cause grounds for termination attributable to the employee. See, P.R. Laws Ann. tit. 29 § 185b(a)-(c). Those other grounds, however, are not relevant to this action.

In that regard, if the employer terminates a more senior employee and retains a less senior employee within the same occupational classification in a reduction in force, the employer has acted without just cause unless there is a clear and conclusive difference in favor of the capacity or efficiency of the less senior employee retained, in which case the higher capacity/efficiency prevails. See, P.R. Laws Ann. tit. 29 § 185c.[14] Similarly, preference must be given to the employees discharged in the event that within six months following the dismissal, the employer hires a person in the same occupational classification. Reinstatement within the classification must follow seniority, subject to the capacity/efficiency exception pointed to above. Id. Failure to so reinstate is considered a termination without just cause. Accordingly, in a downsizing just cause is measured by the criteria set in Article 2 together with compliance with the preferential treatment provisions of Article 3. See, Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 141 & n.25 (1st Cir. 2017)(noting the preferential treatment obligation that Law 80 imposes on the employer when it terminates an employee for one of the three specified grounds relating to restructuring and downsizing); Rodríguez, 180 F.Supp.3d at 132 (discussing Law 80's preferential retention/recall rules).[15]

Like under the ADEA, a *prima facie* showing activates a presumption of discrimination under Law 100. See, Ramos v. Davis & Geck, Inc., 167 F.3d 727 (1st Cir. 1999)(pointing out effect of presumption); Varela-Teron, 257 F.Supp.2d at 464 (same). The employer may rebut the

---

[14] Article 4.5 of the Puerto Rico Transformation and Flexibility Act, Law No. 4 of January 26, 2017, amended this provision to include additional exceptions to the use of seniority as a selection method for lay offs in reductions in force. Nonetheless, the court refers to the language of the statute in effect when the relevant facts occurred.

[15] For a detailed and comprehensive discussion of this topic, see J.L. Capó-Matos, in M.J. Caterine (ed.), *Employment at Will: A State-by-State Survey*-Puerto Rico Chapter (2011), pp. 937-940; 959-969, and 2014 Supplement, pp. 40-17 - 40-22.

presumption proving legitimate, non-discriminatory grounds for the challenged action. See, De Arteaga v. Pall Ultrafine Filtration Corporation, 862 F.2d 940, 941 (1st Cir. 1988)(once activated, the presumption requires employer to prove that the action in question was not discriminatory); Ramos-Santiago v. WHM Carib LLC, 2017 WL 1025784, *6 (D.P.R. March 14, 2017)(citing López Fantauzzi v. 100% Natural, 181 D.P.R. 92, 123 (2011)(explaining, among other things, how employer may rebut the presumption)). Should the employer carry this burden, the presumption of discrimination disappears. At that point, the burden of persuasion shifts back to the employee to show, without the benefit of the presumption, that the action was motivated by prohibited discrimination. Ramos-Santiago, 2017 WL 1025784, *6. The Law 100 analysis does not end even if plaintiff fails to trigger the presumption, for the employee bears the burden of proof on the ultimate issue of discrimination. See, García-García, 878 F.3d at 423 & n.22 (so stating).

### A. **Application of Law to Facts**

    i.    ADEA

As pointed out above, summary judgment was denied because due to an evidentiary gap in connection with the functions of Hoffman's and Martínez' respective positions, the record as presented was unclear on whether the Hospital had treated age neutrally. See, Opinion and Order at Docket No. 180, pp. 2, 13-14. Based on the evidence presented at trial, however, it is apparent that the Hospital treated age neutrally. It did not retain or rehire Martínez or any other employee, much less a younger employee for Hoffman's position. Besides, Hoffman did not apply to a vacant position, the position Martínez was rehired for as Safety Officer. He failed to establish a *prima*

*facie* case of age discrimination or show age animus.[16]  Following is the basis for the court's

conclusion in connection with both the reduction-in-force and the failure-to-rehire aspects of the

litigation.

     a.  Reduction in Force

     Hoffman belongs to the protected class, met the employer's legitimate expectations, and

was laid off.  The First Circuit has found that the legitimate expectation element is satisfied when

plaintiff demonstrates a long history of experience in the employment with defendant.  See,

Acevedo-Parrilla, 696 F.3d at 139 (plaintiff, who had a long history of employment at the

company, spanning an eleven-year period, with overall positive reviews, was qualified for the

position); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995)(citing Woods v.

Friction Materials, Inc., 30 F.3d 255, 261 (1st Cir. 1994)).  This is true even in the absence of

evidence of adequate job performance extending up to the date of discharge.  See, Smith v. Stratus

Computer, Inc., 40 F.3d 11, 15 n.4 (1st Cir.1994)(citing Keisling v. SER-Jobs for Progress, Inc.,

et al., 19 F.3d 755, 760 (1st Cir.1994)).  In this case, Hoffman worked as Hospital Metropolitano's

Physical Plant Department Director for some 17 years, from 1995 until September 30, 2012.

     Similarly, the employer's decision to lay off an employee may constitute an adverse

employment action even if a layoff is not technically the same as a termination or discharge.  See,

Diebel v. L & H Resources, 2010 WL 11519578, *7 (E. D. Mich. Feb. 17, 2010)(so recognizing).

But the fourth prong is measured from the position that Hoffman had occupied and was let go, by

---

[16] During the initial Rule 50(a) arguments, the court commented that a prima facie case had been made under the ADEA (Transcript of Jury Trial held on April 12, 2017, p. 89).  Examining the evidence anew a different conclusion is called for.

reference to Martínez, whom Hoffman claims received a more favorable treatment than he. Yet Hoffman's and Martínez' positions were different. Within the Physical Plant Department, the positions carried different titles, levels of authority and functions. Hoffman was the Director and Martínez the Supervisor, serving as Hoffman's second-in-command. They were not co-directors (Transcript of Jury Trial held on April 11, 2017, pp. 45-46).

When Hoffman delegated tasks to Martínez and asked Martínez to accompany him to certain meetings, he always retained the ultimate authority in the Department. He had the authority to prepare and approve the Department's budget, determine the Department's staffing patterns and retain independent contractors, but Martínez could not do so. He was a member of the Hospital's Executive Cabinet, whereas Martínez was not. The fact that Martínez performed some duties jointly with Hoffman or duties that Hoffman delegated to him did not make the positions of Director and Supervisor one and the same. He testified that although he and Martínez worked on alternate weekends and Martínez could fix physical plant problems during that time. For anything else, however, he had to contact Hoffman before acting. Additionally, both Hoffman and Martínez were laid off when the Physical Plant Department closed, and the Safety Officer position for which Martínez was rehired was different from the Physical Plant Department Director position that Hoffman occupied when he was onboard.

Hoffman argues that his and Martínez' new position were similar because as Director of the Physical Plant Department he performed all of the safety duties that Martínez had as Safety Officer, and those duties are so intertwined with the physical plant of the Hospital that it is impossible to separate them (Transcript of Jury Trial held on April 12, 2017, p. 87; Transcript of

Jury Trial held on April 13, 2017, p. 24). Nevertheless, the question is not whether Hoffman as

Director performed some duties later performed by Martínez as Safety Officer but rather, whether

Martínez as Safety Officer performed the same or substantially the same duties as Hoffman when

he was the Director of the Physical Plant Department.

A discharged employee is not replaced when the employer assigns another employee to

perform his duties in addition to other duties. See, LeBlanc v. Great American Insurance

Company, 6 F.3d 836, 846 (1st Cir. 1993)(so holding). Instead, a person is replaced only when

another employee is hired or reassigned to perform the plaintiff's duties. Id. In this way, to

reasonably infer that Hoffman was replaced by Martínez to the point of having been effectively

retained while Hoffman was not, the record would have to show that Hoffman's duties, "and no

others," were allocated to Martínez. See, Pages-Cahue, 82 F.3d at 539, 542 (articulating test).

However, that is not what the record shows.

There is no evidence that as Safety Officer, Martínez performed any duties related to the

physical plant aspect of Hoffman's job. In fact, he performed about ten percent of the duties

Hoffman performed as Director of the Physical Plant Department (three out of thirty-four duties).

Even more, Hoffman admitted that the safety duties he performed as Director of the Physical Plant

Department could be performed by an individual independently from the Physical Plant

Department (Transcript of Trial held on April 11, 2017, pp. 52-53). In that regard, Martínez did

not replace Hoffman occupying the same position Hoffman had with a different title. See, Pages-

Cahue, 82 F.3d at 539, 542 ("to reasonably infer that Pages was replaced by a younger employee,

we would have to conclude that Pages' duties, and no others, were allocated to Alós…"); Santiago-

Hernández v. Puerto Rico Danka, Inc., 363 F.Supp.2d 66, 73 (D.P.R. 2005)(summary judgment dismissing age discrimination action of plaintiff terminated when her position was eliminated as part of a reduction in force; there was no evidence that in implementing the downsizing younger individuals were retained occupying plaintiff's position; she was not substituted by another employee in a different position who absorbed plaintiff's duties in addition to other tasks).

Hoffman posits that a jury issue exists because Martínez and the persons who replaced Martínez as Safety Officer were in their thirties or younger than Hoffman, and that the majority of the employees laid off from the Physical Plant Department were over age 50 (Transcript of Jury Trial held on April 12, 2017, pp. 131-132; Transcript of Jury Trial held on April 13, 2017, pp. 25-26). Difference in age is inconsequential where, as here, the employees are not similarly situated. See, Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1117-111 (6th Cir. 1980)(directing verdict to dismiss age discrimination claim of plaintiff whose job was eliminated; that his former duties were assumed by a younger employee who performed them in addition to other duties was insufficient to show discrimination). Furthermore, the closing of the Physical Plant Department was legitimate, predicated on non-discriminatory grounds,[17] and the Hospital did not hire personnel to fill the positions of the employees who were laid off when the Department closed.

On this record, it cannot reasonably be said that the Hospital failed to treat age neutrally or that younger persons were retained in Hoffman's position when it laid off Hoffman during the reduction in force. The fourth prong is missing. Failure to establish a *prima face* case of discrimination justifies dismissal as a matter of law. See, Del Valle-Santana v. Servicios Legales

---

[17] For the complete factual background, see, Docket No. 180 at pp. 3-8.

de Puerto Rico, Inc., 804 F.3d 127, 131-132 (1st Cir. 2015)(dismissing ADEA claim of plaintiff

discharged during downsizing for failure to establish *prima face* case of age discrimination).

b. Failure to Rehire

Again, Hoffman belonged to the protected class, and the court assumes that he was qualified

to occupy the Safety Officer position. But he never applied for that position. In absence of the

job application, there was no adverse employment action sufficient to sustain a *prima facie* case

in this context. See, Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 807-808 (1st Cir.

2006)(examining similar requirement in retaliation action and concluding that no adverse action

occurred because plaintiff never applied for the position). [18] An employer is not "obligued to

defend its decision not to hire an individual for a position for which [...]he has not specifically

applied." Id. at 808.[19] So, dismissal is appropriate. See, Brown, 159 F.3d at 902 (judgment as a

---

[18] In Vélez, plaintiff was laid off in December 1998. Id. at 804. In February 1999, she sent a letter to the employer requesting to be considered for a new Manufacturing Supervisor position. Id. In May 1999, she sent a letter applying for a Senior Packaging Engineer position. Id. In August 2001, she sent a letter via certified mail requesting consideration for employment in any position available in a variety of job categories. Two weeks later, she sent an identical letter, this time via facsimile. Id. In response to the August letters, the company's director of human resources stated that plaintiff would not be considered for an interview or rehiring. Id. at 804-805. The letter mentioned plaintiff's prior layoff and severance as well as the company's business needs as an explanation. Id. at 805. About three days after the rejection letter, the employer placed advertisement for two Manufacturer Process Facilitator positions. Id. The First Circuit concluded that a plaintiff claiming failure to hire must have submitted an application for the position in question rather than merely stated general expressions of interest in employment, and plaintiff had not specifically applied to that position. Id. at 808. A letter that "merely expresses interest in a wide range of positions … is not the application for a discrete, identifiable position required under [the statute]". Id. at 809. Cf. Fernandes, 199 F.3d at 584 (*prima facie* showing in part because plaintiffs returned to the job site at various times after the layoff and sought reinstatement as masons, were for the most part rebuffed and the employer had an ongoing need for masons, hiring and recalling many throughout the relevant period).

[19] To be sure, some courts have observed that "there are certain situations where less than a formal application is adequate." Wanger v. G.A. Gray Co., 872 F.2d 142, 146 (6th Cir. 1989). Those include instances of so-called "futility; where the employer had a policy of hiring without publicizing the position and accepting applications; and where the employer had a policy of seeking out employees that had been laid off and calling them to work. See, Martin, 20 Fed. Appx. at 233-234 (discussing exceptions to application requirement); Wanger, 872 F.2d at 147 (same). As for futility, it has been noted that the plaintiff must show that he did not apply because he had a reason to believe that, had he applied, he would have been rejected. See, Martin, 20 Fed.Appx. at 233-234 (so noting). Regarding policies of hiring without announcing and accepting applications, it has been held that the plaintiff must have shown more than a mere general interest in the position. See, Wanger, 872 F.2d at 146 (discussing topic). Hoffman did not, however, attempt to show that the Hospital's hiring or rehiring policies and practices fit any of these scenarios. The gap is fatal here. See, Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998)(dismissing discrimination case because plaintiff failed to apply for the position or to show that his failure to apply was based on his knowledge that to do so would have been futile); Martin,

matter of law dismissing discriminatory failure to reemploy claim due to plaintiff's failure to establish *prima facie* case); Vélez, 467 F.3d at 808 (summary judgment under similar circumstances).

    c.   <u>Final Analysis</u>

Setting aside for the moment the evidentiary shortcomings related to the *prima facie* aspects of the dispute, at bottom, the problem in this case derives from the fact that the Hospital rehired Martínez some three months after the Physical Plant Department's closing. Both he and Hoffman were laid off, but Martínez was rehired, albeit in a different position than the ones Hoffman and he occupied before the closing. And the rehiring led Hoffman to perceive a difference in treatment that he has attributed to his age. In the final analysis, however, the record shows no age animus.

Focusing on the Safety Officer position for which Martínez instead of Hoffman was hired, the Hospital's Executive Director testified without contradiction that he contemplated creating the position in December 2012, approximately two months after the closing of the Physical Plant Department, created it in January 2013, and hired Martínez for the position that same month (Transcript of Jury Trial held on April 12, 2017, pp. 109-110). He pointed out that Martínez was no longer with FSM; knew the Hospital's operations; and had worked on safety matters when he was a hospital employee. <u>Id.</u> at p. 110. He explained that he did not consider hiring Hoffman because the position was not a director position such as the one that Hoffman occupied when he

---

20 Fed.Appx. at 233-234 (dismissing age discrimination claim of plaintiff how failed to apply for the position at issue and did not allege that he had any reason to believe that, had he applied, he would have been rejected). *Cf.* United States v. Gregory, 871 F.2d 1239, 1241-1242 (4th Cir. 1989)(excusing female plaintiff's failure to formally apply for deputy position because employer had explicitly stated he did not hire women deputies).

worked in the Hospital; the position lacked the decision-making authority that directors had, with a third of the pay that Hoffman had received as director; and the Executive Director was under the impression that Hoffman was not interested in working for or providing services at the Hospital. Id. at pp. 120, 124-126.

The Executive Director's impression was based on conversations with FSM, to the effect that FSM had tried to contact Hoffman for the transition period but was not able to do so because – as FSM indicated to the Executive Director – Hoffman never responded to FSM's calls. Id. at pp. 120, 124-125, 128.[20] This is supported by Hoffman's trial testimony, that he would not have worked for FSM even if FSM had offered him a position in the company or a consulting opportunity (Transcript of Jury Trial held on April 11, 2017, pp. 60, 66).[21]

No evidence was submitted to contradict the Executive Director's explanation. Discriminatory animus cannot be reasonably inferred from the hiring of a younger employee for a

---

[20] Hoffman objected to what FSM stated on hearsay grounds (Trial Transcript April 12, 2017, p. 120). Hearsay is an out-of-court statement used to prove the truth of the matter asserted. See, Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 575 (1st Cir. 1989)(quoting Fed. R. Evid. 801(c)(defining hearsay)). A witness' statement is not hearsay if the witness is reporting what he heard someone else tell him for the purpose of explaining what the witness was thinking at the time or what motivated him to do something. See, United States v. Leonard-Allen, 739 F.3d 948, 954 (7th Cir. 2013)(so recognizing). Thus, an out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay. See, United States v. Hanson, 994 F.2d 403, 406 (7th Cir. 1993)(so acknowledging). The reference to FSM was not considered for its truth, but to show its effect on the decision maker's state of mind. See, Transcript of Jury Trial held on April 12, 2017, pp. 120-121. So it was not inadmissible hearsay. See, Vázquez-Valentín v. Santiago-Díaz, 459 F.3d 144, 150-151 (1st Cir. 2006)(documents describing personnel irregularities not hearsay because they were offered as an explanation for defendants' actions rather than for the truth of the personnel irregularities described in the documents); Moore v. Sears, Roebuck and Company, 683 F.2d 1321, 1322-1323 (11th Cir. 1982)(memoranda prepared by plaintiff's supervisors over a period of months containing observations pertaining to plaintiff's performance not hearsay, as they were tendered to establish that employer was motivated in good faith to discharge plaintiff for reasons other than age instead of to prove the truth of the document' content); Collins v. James River, 1994 WL 921999, *7 (D.Mass. March 17, 1994)(negative comments made to plaintiff's supervisor when he first became Vice President regarding plaintiff's performance not hearsay, for the statements were offered to show his state of mind in evaluating plaintiff's performance, not to prove that the comments were true).

[21] Even if FSM had hired Martínez to perform Hoffman's job during the transition period, Hoffman would not be entitled to prevail. See, Snyder v. Pierre's French Ice Cream Co., 589 Fed. Appx. 767, 768-769, 771 (6th Cir. 2014)(unpublished)(observing that an allegation that the employer assigned the former employee's work to an independent contractor that decided to employ younger persons to do the plaintiff's work is, without more, insufficient to establish a prima facie case of age discrimination).

position inferior to plaintiff's previous job.  See, Pages-Cahue, 82 F.3d at 538-539 (so holding).

The employer does not have the obligation to offer lower echelon, poorer paying jobs in the

restructured enterprise to older employees.  See, Varela-Teron, 257 F.Supp.2d at 461 (so noting).

In the same way, the employer's perception that plaintiff was not interested in work has been

recognized as a legitimate, non-discriminatory ground for not rehiring him.  See, Pulitzer v. New

Hartford Teachers' Ass'n, 1999 WL 197212, *2-*3 (2d Cir. March 26, 1999)(dismissing action

against school district that did not rehire plaintiff as teacher, in part due to district's understanding

that plaintiff was not interested in teaching in elementary school); Diebel v. L& H Resources, 2010

WL 11519578, *10-*11 (E.D. Mich. Feb. 17, 2010)(employer did not rehire plaintiff in part

because it understood that plaintiff wanted to retire rather than work).[22]

What is more, there is no evidence of discriminatory comments by any person, much less

from the Executive Director (the decision maker), which would taint the layoff and rehiring

processes here.  He testified that he did not take into account Hoffman's or Martínez' age, and that

he works well with people of all ages, including those over 45 -who comprised the majority of the

Hospital's staff- and even in the 70's (Trial Transcript, April 12, 2017, p. 131).  All in all, the

evidence is not sufficiently probative to allow a reasonable factfinder to conclude that the Hospital

---

[22] As part of the Hospital's non-discrimination policy, the Hospital's Associate Manual states in part that the Hospital does not discriminate against any candidate for employment due to physical and mental impediment, and for that reason, in recruiting for a vacancy the Hospital is guided by the candidate's skills and capacity according to the position (Appendix C).  On its face, the statement seems linked to impairments rather than to other characteristics such as age.  At any rate, Hoffman was never a candidate (the Executive Director was under the impression that he was not available), but assuming otherwise, as described above the Executive Director explained the non-discriminatory grounds leading him to hire Martínez instead of Hoffman for the Safety Officer position in light of Hoffman's and Martínez' background, considering the position's level of authority, duties and compensation.  To that extent, he acted in conformity with the Manual.  See, Mesnick v. General Electric Company, 950 F.2d 816, 825 (1st Cir. 1991)("Courts may not sit as super personnel departments, assessing the merits –or even the rationality- of employer's nondiscriminatory business decisions").

intentionally discriminated against Hoffman because of his age in violation of the ADEA. Therefore, the ADEA claim must be DISMISSED.

  ii.  Law 80/Law 100

The record shows just cause for the termination of Hoffman's employment in both the layoff and the potential rehire stages arising out of the downsizing. First, the Physical Plant Department's closing qualifies as just cause under Law 80. See, De la Garza Blizzard v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 787 F.Supp. 31, 34 (D.P.R. 1992)(discharge resulting from elimination of plaintiff's position after hospital's medical direction section's ceasing of operations considered justified, as one linked to the closing of an establishment pursuant to Article 2 of Law 80, supra at § 185b(d)); J.L. Capó-Matos, supra at p. 960 ("Demonstrating the employee's dismissal resulted from the closing of the establishment where the worker was employed is sufficient to meet the 'just cause' requirement under the act. The statute does not contemplate inquiry into the employee's reasons for the closing").[23]

Second, given that no retention or rehiring within Hoffman's occupational classification occurred, the Hospital did not have to follow Law 80's preferential treatment rules in rehiring Martínez instead of Hoffman as Safety Officer.[24] See, Lizardi v. JC Penney Puerto Rico, 2015 WL 3795031, *1-*2, *5-*6 (Puerto Rico Court of Appeals April 30, 2015)(dismissing claim of

---

[23] Even still, as expressed earlier, the Hospital closed the department to promptly cure deficiencies and to ensure future compliance with CMS' and the Joint Commission's standards to avoid adverse financial consequences. These reasons are not arbitrary. They are directly related to the Hospital's business operation. Hence, they are sufficient to independently establish just cause for the discharge. See, Echevarría, 856 F.3d at 140-141 (finding just cause under Law 80 because reasons for termination were not arbitrary and bore some relationship to the employer's business operation).

[24] Had Hoffman and Martínez occupied positions within the same occupational classification and Martínez -the less senior employee- had been recalled or rehired to occupy a position in the same classification, on the record as developed here the transaction would not qualify as just cause under Law 80.

employee discharged during reduction in force resulting from reorganization of operations, as her position was eliminated and employer did not violate Law 80's preferential treatment rules); Colón-Cintrón v. Koper Furniture, Inc., 2014 WL 1715176, *1-*2, *8-*9 (Puerto Rico Court of Appeals March 31, 2014)(permanent closing of company's merchandise delivery operations justified discharge of plaintiff's delivery driver's job under Law 80; as the defendant did not contract or rehire employees within that occupational classification but rather subcontracted those services to a different company, it did not have the obligation to retain plaintiff on the job).[25]

On these facts, the Hospital acted with just cause within the meaning of the statute. Hoffman did not rebut that showing. As a result, he cannot trigger a presumption of discrimination under Law 100. See, De la Garza Blizzard, 787 F.Supp. at 34 (inasmuch as just cause existed for termination under Law 80, plaintiff failed to activate presumption of discrimination under Law 100). In addition, as discussed above in the context of the ADEA, taking into account the uncontroverted character of the decisionmaker's legitimate, nondiscriminatory reasons for closing the department and not hiring Hoffman as Safety Officer together with the absence of age animus, Hoffman has not satisfied the burden of proof on the ultimate issue of discrimination. Consequently, the Law 80 and Law 100 claims must be DISMISSED.

---

[25] In denying the Hospital's motion for summary judgment, the court recognized that a department's closing is considered just cause for discharge under Puerto Rico law, but that it was unclear whether age was treated neutrally. See, Docket No. 180 at p. 15 (analyzing Law 100 at summary judgment stage). The reference to the neutrality aspect is best viewed as a response to the lack of evidence at that procedural juncture on the need to comply with Law 80's preferential treatment provisions, assessed against the background of the evidentiary gap referred to earlier. Be that as it may, as explained in the text, the record shows that all components of the just cause element have been met.

## V.    CONCLUSION

In view of the foregoing, the Hospital's Rule 50(a) motion is GRANTED.  An employee's personal beliefs, conjecture and speculation regarding the employer's bias are insufficient to support an inference of age discrimination.  See, Snyder, 589 Fed. Appx. at 768-769, 771 (applying principle in sustaining dismissal of discrimination claim brought against employer who did not rehire a plaintiff let go during reduction in force).  The evidence was insufficient to allow a reasonable jury to conclude that Hoffman was unjustly discharged or discriminated against because of his age.  Therefore, the case is DISMISSED.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of January, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge